618 A.2d 463

**COMMONWEALTH of Pennsylvania**

v.

**Jerome LOACH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1992.

Filed Dec. 31, 1992.

528

Norris E. Gelman, Philadelphia, for appellant.

Patricia Coonahan, Asst. Dist. Atty., Cheltenham, for Com., appellee.

Before ROWLEY, President Judge, and CAVANAUGH, McEWEN, DEL SOLE, BECK, TAMILIA, KELLY, POPOVICH and FORD ELLIOTT, JJ.

BECK, Judge:

█ In this appeal we consider the propriety of using a progression charge to instruct the jury in a murder case. A progression charge instructs the jury to consider at the outset whether a defendant is guilty of the most serious degree or form of the crime with which he has been charged; if not, the jury then proceeds to consider, in descending order of seriousness, defendant's guilt or innocence on the lesser degrees and forms charged. Appellant here claims that his trial counsel was ineffective for failing to raise a variety of objections to the progression charge given at his trial. We find that appellant is not entitled to relief, pursuant to the mandate of *Commonwealth v. Lawson*[1] that second or subsequent petitions for post-conviction relief will not be considered except where petitioner has made out a prima facie showing that a miscarriage of justice has occurred or that he is innocent. We affirm the order of the trial court denying appellant relief under the Post Conviction Relief Act, 42 Pa.Cons.Stat.Ann. § 9541 *et seq.*

Defendant–appellant Jerome Loach was convicted following a jury trial of third degree murder, attempted murder, aggravated assault and other related charges. The trial court described the incident out of which this case arose as follows:

The event which led to these charges began on the morning of May 24, 1988, at Graterford Prison where defendant was an inmate. The defendant and another inmate, Jamal Brawley, the murder victim, were engaged in conversation in the main corridor of the prison. A third inmate, Norman Graham, approached the two and began to speak with the victim when Graham was physically attacked by a fourth

1. 519 Pa. 504, 549 A.2d 107 (1988).

inmate, Raymond Pryor. While Graham and Pryor continued their fight, defendant pulled out a homemade knife and stabbed Jamal Brawley several times. The stab wound inflicted on the left side of Brawley's neck was fatal. Defendant then turned to Graham and stabbed him in the back four or five times. Graham recovered from his injuries. A corrections officer, Michael Bivins, present at the scene during the incident identified defendant as the inmate who was wielding the knife shortly after the stabbing of the victim. Corrections officers recovered the knife, which Bivins had seen in the defendant's hand during the occurrence, in the main corridor immediately after the incident.

Trial Ct. Op. 2/6/90, pp. 1–2. Appellant testified at trial that he stabbed neither Brawley nor Graham. N.T. 2/17/89, pp. 43, 46. He claimed that he became involved in the altercation only when Brawley approached him and attempted to rob him of his wedding ring, watch and glasses. N.T., pp 36–38. Appellant claims that, during the struggle, another, unknown inmate approached and stabbed Brawley. N.T., p. 43.

At the close of evidence, the court instructed the jury as follows:

There are three types of criminal homicide that you might possibly find in this case; they are, murder of the first degree, murder of the third degree, and voluntary manslaughter. It will be your responsibility to decide whether or not to find the Defendant guilty of any of these crimes . . . . .

[Defines malice]

On the other hand, killing is without malice if the killer acted under circumstances reducing the killing to voluntary manslaughter. I will tell you more about what constitutes circumstances reducing a killing to voluntary manslaughter when I define that crime . . .

I will now be defining for you the elements of the three types of criminal homicide that you might possibly find in this case. As I said, beginning with the most serious, they are, in order, first degree murder, third degree murder and voluntary manslaughter. You have the right to bring in a

verdict and find the Defendant not guilty, or find him guilty of one of these types of criminal homicide. So, what you will do, on the first charge of criminal homicide, murder of the first degree, you would consider that first and you would find the Defendant either guilty or not guilty of that charge. If you find him guilty, then it is not necessary to go on to the other types of criminal homicide. I want to make that point clear because that is different from what you will be doing with reference to the other charges.

In other words, if you find the Defendant guilty of murder of the first degree, you do not then go on to consider murder of the third degree or voluntary manslaughter. If, however, you find the Defendant not guilty of murder in the first degree, then you would go on to consider murder of the third degree. If you find him guilty of murder of the third degree, you don't go on to consider voluntary manslaughter. If you find him not guilty of murder in the third degree, then you would go on to consider voluntary manslaughter and make that determination, guilty or not guilty.

\*    \*    \*    \*    \*    \*

The first thing you would consider then is the crime of murder in the first degree....

If you find that he is guilty of this crime, then you would move on to consider the aggravated assault; you would not consider the rest of the homicide charges. On the other hand, if you find him not guilty of murder in the first degree, then you would go on to consider murder of the third degree....

Now let me define that [third degree murder] ...

Again, then, with reference to third degree murder, you would make a determination as to whether he was guilty or not guilty. If he's guilty of that, you don't consider voluntary manslaughter. If he's not guilty of that, then you would consider voluntary manslaughter.

Let me go on then to consider voluntary manslaughter. Let me read the legal definition that would apply to that. As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present.

When those circumstances are present, a killing may be voluntary manslaughter, but never murder. This is true when a defendant kills in the heat of passion following serious provocation.

Accordingly, you can find malice only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from serious provocation by the victim.

The term passion includes anger, rage, sudden resentment or terror which renders the mind incapable of cool reflection. Serious provocation is conduct that is sufficient to excite an intense passion in a reasonable person. Unless you are returning a verdict of murder, you may find the Defendant guilty of voluntary manslaughter, regardless of any provocation or passion, if you are satisfied that the following three elements have been proven beyond a reasonable doubt: First, that William Brawley is dead; second, that Defendant killed him; third, that the killing was with the specific intent to kill. A killing is with the specific intent to kill if it is committed by a person who has a fully-formed intent to do so and who is conscious of his own intent.

That would then be the definition of voluntary manslaughter, and that would end the instructions with reference to the various issues of criminal homicide.

N.T. 2/21/89, pp. 36–44.

The jury convicted appellant of third degree murder, attempted murder, aggravated assault and other related charges. He was sentenced to ten to thirty years. Appellant retained new counsel and appealed his judgment of sentence to this court, which affirmed. The Supreme Court denied appellant's petition for allowance of appeal.

Appellant thereafter filed his first petition under the Post Conviction Relief Act, 42 Pa.Cons.Stat.Ann. § 9541 *et seq.*, challenging the trial court's calculation of his prior record score. Appellant was pro se on this first PCRA petition. The trial court granted appellant's petition and re-sentenced him to nine to twenty years imprisonment.

Appellant then filed his second petition seeking relief under the PCRA, this time claiming that trial counsel was ineffective for failing to object to the progression charge given at trial. The trial court denied his petition, and this timely appeal followed.

Appellant raises the following issues on appeal. Appellant claims that his trial counsel was ineffective for failing to object to the progression charge on the grounds that:

(1) the charge denied appellant the benefit of the constitutional due process requirement that an instruction on voluntary manslaughter be given in every murder trial pursuant to *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3rd Cir.1974);

(2) the charge violated appellant's constitutional due process right to a charge on voluntary manslaughter even in the absence of any evidence at trial supporting such a charge;

(3) the charge interfered with the jury's exercise of its "mercy-dispensing" power to return a verdict of voluntary manslaughter despite evidence proving guilt of a more serious degree of murder;

(4) by structuring the jury's consideration of the verdict as it did, the judge was acting as a "thirteenth juror" and usurping the jury's prerogative to decide how it wanted to proceed in reaching its verdict; and

(5) the charge failed to instruct the jury, prior to defining first degree murder, that it must consider mitigating circumstances in deciding whether or not malice had been shown.

Appellant claims that his counsel on direct appeal was ineffective for failing to raise this ineffectiveness on the part of trial counsel.

█ We note that this is an appeal of the denial of appellant's *second* PCRA petition. We must therefore consider as an initial matter the Supreme Court's mandate that second or subsequent petitions for post-conviction relief "will not be entertained unless a strong **prima facie** showing is offered to

demonstrate that a miscarriage of justice may have occurred."
*Commonwealth v. Lawson,* 519 Pa. 504, 513, 549 A.2d 107, 112
(1988).[2] Only if the *Lawson* threshold showing is made will
we go on to determine whether appellant has also established
the four prerequisites for relief set forth in the PCRA, 42
Pa.Cons.Stat.Ann. § 9543. *Commonwealth v. Ryan,* 394
Pa.Super. 373, 575 A.2d 949 (1990).

In *Lawson,* petitioner on a serial PCHA petition raised the
claim that his trial counsel was ineffective for failing to raise a
Rule 1100 violation on the part of the Commonwealth. The
trial court ruled that petitioner was entitled to a hearing on
his petition, and the Superior Court affirmed.

The Supreme Court reversed. After noting the abuse of
the judicial system occasioned by permitting repetitive claims
for post-conviction relief, and the legislature's intent to limit
such claims,[3] the Court held that:

> [W]e cannot permit our continuing concern for assuring that
> persons charged with crime receive competent representa-
> tion in their defense to be exploited as a ploy to destroy the
> finality of judgments fairly reached. We therefore conclude
> that a second or any subsequent post-conviction request for
> relief will not be entertained unless a strong **prima facie**

**2.** The petition in *Lawson* was brought under the PCHA; however, it is
clear that the *Lawson* standard applies to claims brought under the
PCRA as well. *See, e.g., Commonwealth v. Dukeman,* 413 Pa.Super.
397, 605 A.2d 418 (1992); *Commonwealth v. Brimage,* 398 Pa.Super.
134, 580 A.2d 877 (1990); *Commonwealth v. Ryan,* 394 Pa.Super. 373,
575 A.2d 949 (1990); *Commonwealth v. Blackwell,* 384 Pa.Super. 251,
558 A.2d 107 (1989). *See also* the Comment to Pa.R.Crim.P. 1507,
Disposition Without Hearing, effective July 1, 1989, which states that
"[a] second or subsequent motion should be summarily dismissed when
the judge determines that the defendant has failed to make a strong
prima facie showing that a miscarriage of justice may have occurred,"
citing *Lawson.*

**3.** The Supreme Court noted that the new PCRA required that an
individual alleging ineffective assistance of counsel must prove that
counsel's action "so undermined the truth-determining process that no
reliable adjudication of guilt or innocence could have taken place," 42
Pa.Cons.Stat. § 9543(a)(2)(ii), which the Court stated "clearly reflect[s]
a legislative perception that courts had been too generous in entertain-
ing claims for relief under the former statute." 549 A.2d at 112, n. 12.

showing is offered to demonstrate that a miscarriage of justice may have occurred.

\* \* \* \* \* \*

A repetitive or serial petition may be entertained only for the purpose of avoiding a demonstrated miscarriage of justice, which no civilized society can tolerate. With regard to the instant case, the petitioner does not attack the fairness of the trial that resulted in his conviction, nor does he even assert that he was innocent of the criminal charges involved. What he seeks to do is to negate his obligation to stand trial, and in that effort relies on a procedural technicality. There has been no showing of a miscarriage of justice that would warrant entertaining his repetitive application for collateral relief. This petition should have been dismissed by the court without a hearing.

*Id.* at 513, 549 A.2d at 112.

This court has applied the *Lawson* standard in numerous cases since *Lawson* was decided. We have held that the *Lawson* standard is met if the petitioner can demonstrate "either that the proceedings resulting in his conviction were so unfair that a miscarriage of justice which no civilized society can tolerate occurred or that he is innocent of the criminal charges." *Commonwealth v. Dukeman,* 413 Pa.Super. 397, 402, 605 A.2d 418, 420 (1992), *quoting Commonwealth v. Ryan,* 394 Pa.Super. 373, 376, 575 A.2d 949, 950–951 (1990).[4] The issue before us then is whether or not Loach has made a

4. We have also recognized one exception to *Lawson's* applicability, in *Commonwealth v. Thomas,* 396 Pa.Super. 92, 578 A.2d 422 (1990). In that case, this court had initially denied the appeal of Thomas' first PCRA petition, without prejudice, because Thomas' counsel failed to file briefs. Thomas' second petition raised again precisely the issue raised in his first. But for counsel's procedural default, we would have addressed this issue in Thomas' appeal of the denial of his first petition. We found that under the unique circumstances of the case, we would treat petitioner's second petition as a first attempt under the PCRA, and that therefore *Lawson* did not bar the petition. We noted that because Thomas was raising the same claim in his second petition as he had in his first, the abuse at which *Lawson's* preventive rule was aimed (*i.e.,* serial petitions, each raising a new issue allegedly overlooked through the ineffectiveness of all prior counsel) was not at issue. 578 A.2d at 424. This limited exception to *Lawson* does not apply to appellant here.

**prima facie** showing that the ineffectiveness of his trial counsel resulted in a miscarriage of justice or the conviction of an innocent man. We find that he has not made this showing. We therefore affirm the order of the trial court denying him relief.

█ Appellant first claims that the trial court's progression charge violated his constitutional right to a jury instruction on voluntary manslaughter. Appellant's Brief, p. 22. Appellant cites *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3rd Cir.1974) for the proposition that the Due Process Clause of the United States Constitution entitles a murder defendant in Pennsylvania to have the trial court, upon defendant's request, charge the jury on voluntary manslaughter. *Ibid.*

Our analysis of this issue is brief. Our review of the record shows that the jury was in fact instructed on voluntary manslaughter, as set forth in our excerpts from the jury charge above. Assuming arguendo that appellant is correct in his reading of *Matthews*, the trial court in this instance gave appellant what he asks for thereunder. Appellant's claim of error is therefore frivolous. We will not find that appellant has met the *Lawson* standard of making out a **prima facie** case that a miscarriage of justice has occurred where his claim can be shown on the face of the record to be without any factual basis. *Commonwealth v. Senk*, 399 Pa.Super. 627, 630, 582 A.2d 1119, 1121 (1990), *alloc. den.*, 528 Pa. 623, 597 A.2d 1152 (1991).[5]

Appellant's second claim is a variation on his first. He claims that he has a constitutional due process right to have the jury instructed on voluntary manslaughter, even in the absence of evidence adduced at trial that would support such a verdict. Again, we find appellant's argument to be without any factual basis. As discussed above, the trial court did not refuse to instruct the jury on voluntary manslaughter on the

5. Appellant also appears to argue that the progression charge "dilutes" the voluntary manslaughter charge to which he is entitled. *See* Appellant's Brief p. 27. This argument is unsupported by citation of any authority, or any convincing argument as to how this "dilution" establishes that a miscarriage of justice which no civilized society can tolerate has occurred or that appellant is innocent.

grounds that the evidence did not support such an instruction, or on any other grounds; the jury that convicted appellant *was* instructed on voluntary manslaughter.

■ Appellant next claims that his counsel was ineffective for failing to object to the progression charge on the ground that the charge unduly hampers the jury's "mercy-dispensing" power to convict a defendant of a less serious crime than that proved by the Commonwealth, citing *Commonwealth v. McClendon,* 478 Pa. 108, 385 A.2d 1337 (1978). Appellant's Brief, p. 30. We note that there is serious doubt as to whether the courts of this Commonwealth still recognize a "mercy-dispensing" function on the part of the jury, *see Commonwealth v. Hernandez,* 412 Pa.Super. 485, 492, 603 A.2d 1039, 1043 (1992) ("mercy charge," telling the jury that it may return a verdict for a less serious crime than was established by the evidence, "authoriz[es] the jury to return a verdict based upon an emotional reaction rather than the facts presented" and is improper). However, even if such a mercy-giving power were recognized, we could not consider the claim appellant raises herein. *Lawson* commands us to determine whether a second-time PCRA petitioner has shown a miscarriage of justice or the conviction of an innocent man. Appellant does not claim here that his conviction was not supported by the evidence, or is otherwise factually incorrect. The claim appellant raises here is not that he was denied justice, but that he was denied mercy. The *Lawson* threshold is therefore not met, and we will not consider this claim further.

Appellant's fourth and fifth issues require a more detailed analysis. Both challenge the propriety of the jury charge given at appellant's trial. The propriety of the jury charge is critical to the fairness of a trial and the validity of the conviction obtained therefrom. A grossly improper charge may, under certain circumstances, result in the conviction of an innocent individual or a miscarriage of justice. *See, e.g., Commonwealth v. McFadden,* 402 Pa.Super. 517, 522, 587 A.2d 740, 742 (1991) (*Lawson* standard met where trial counsel failed to request that the jury be charged on self-defense,

despite evidence supporting such a charge). We find, however, that the charge given at appellant's trial was not improper.

■ Appellant's fourth claim is that his trial counsel was ineffective for failing to object to the progression charge on the grounds that the charge "positioned the court as a thirteenth juror and defeated the judge/jury relationship." Appellant's Brief, p. 34. Appellant argues that "[t]elling the jury where to start its deliberations and when to vote is not the role of the trial judge. It is the role of the jury themselves to determine these questions." *Ibid.* Appellant acknowledges that we have already rejected precisely this argument in *Commonwealth v. Hart*, 388 Pa.Super. 484, 565 A.2d 1212 (1989), *alloc. den.*, 525 Pa. 642, 581 A.2d 569 (1990). Appellant argues that Hart was wrongly decided.[6] We disagree.

In *Commonwealth v. Hart*, we dismissed the claim that appellant's counsel had been ineffective for failing to object to the progression charge given at his murder trial. We found that the progression charge was simply a structure for the jury's deliberations where multiple forms or degrees of the same crime were charged, and did not inappropriately interject the judge in the jury's determination of defendant's guilt or innocence:

> While the jury must serve as the sole finder of fact, the trial court has a duty to frame legal issues for the jury and instruct the jury on the applicable law. *See Commonwealth v. Leonhard*, 336 Pa.Super. 90, 95, 485 A.2d 444, 446 (1984). One method by which the court may choose to clarify issues for the jury is to direct the jury to consider at the outset the most serious form of the offense with which the defendant has been charged. If the jury were first to consider a less serious form of the offense, it might return a verdict of guilty of the lesser charge without determining whether the Commonwealth also proved the additional facts necessary to establish the more serious crime. By directing the jury to

6. Appellant also cites a variety of federal cases in support of his fourth claim of error, such as *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3rd Cir.1974), *United States v. Spock*, 416 F.2d 165 (1st Cir.1969), and *United States v. Desmond*, 670 F.2d 414 (3rd Cir.1982). We note that we are not bound by those federal decisions.

begin its deliberations with the greater offense, the judge can help to ensure that the jury will bring its independent judgment to bear on all important aspects of the Commonwealth's case. Thus, as a general rule, a progression charge is proper where the defendant is charged with different forms or degrees of the same crime.

*Commonwealth v. Hart, supra,* 565 A.2d at 1216.

We find that the progression charge given at appellant's trial was proper. We therefore conclude that appellant suffered no miscarriage of justice on this aspect of the charge.

■ Appellant's final claim is that his trial counsel was ineffective for failing to object to the trial court's failure to instruct the jury on mitigating circumstances *prior* to instructing them on the most serious form of murder, murder in the first degree. Appellant claims that the trial court restricted its discussion of mitigating factors to the instruction on voluntary manslaughter, which was given much later in the jury charge. Appellant's Brief, pp. 32–33. We do not find the error alleged by appellant to meet the *Lawson* standard.

The trial court began its charge by telling the jury that it had the right to find appellant guilty of any or none of the forms of criminal homicide charged in the case. The court then defined malice. Immediately after defining malice, and prior to defining first-degree murder, the trial court instructed the jury that:

> [K]illing is without malice if the killer acted under circumstances reducing the killing to voluntary manslaughter. I will tell you more about what constitutes circumstances reducing a killing to voluntary manslaughter when I define that crime.

N.T. 37. Again, in defining first-degree murder, the court stated that under that crime the jury had to find that defendant committed the killing "with malice … As my earlier definition of malice indicates, a killing is with malice if it is with the specific intent to kill, not under circumstances reducing the killing to voluntary manslaughter." N.T. 40. The

court repeated this statement in its instruction on third degree murder. N.T. 42.

In its instruction on voluntary manslaughter, the court then went into more detail in describing the parameters of mitigating circumstances:

> As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present. When those circumstances are present, a killing may be voluntary manslaughter, but never murder. This is true when a defendant kills in the heat of passion following serious provocation.
>
> Accordingly, you can find malice only if you are satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from serious provocation by the victim.
>
> The term passion includes anger, rage, sudden resentment or terror which renders the mind incapable of cool reflection. Serious provocation is conduct that is sufficient to excite an intense passion in a reasonable person.

N.T. 43.

This review of the record demonstrates that the trial court did instruct the jury, prior to its instruction on first-degree murder and again during its instruction on first- and third-degree murder, that they could not find malice if certain mitigating ("reducing") factors were present. Appellant argues that the failure to describe in more detail at those points in the charge what the mitigating circumstances were renders the progression charge improper. Appellant's Brief, pp. 32–33. Appellant cites in support of this proposition the following language from *Commonwealth v. Hart, supra:*

> We caution that a trial judge should carefully instruct the jury regarding factors that may be capable of rebutting an inference of malice. Whenever the trial judge gives a progression charge in a homicide case, he should accompany the charge with an instruction that they must take any evidence of 'heat of passion' or 'unreasonable belief' into account when initially determining whether the Commonwealth has established the malice element of murder beyond

a reasonable doubt. Without proper instructions regarding malice, the jury might misinterpret the progression charge as mandating a conviction for murder despite the presence of mitigating evidence establishing 'heat of passion' or 'unreasonable belief.'

565 A.2d at 1218.

Appellant cites the above paragraph from *Hart* for the proposition that a progression charge is invalid unless the court gives a fuller description of what would constitute the mitigating circumstances referred to *prior* to defining any degree of murder; rather than, as the court did here, give the fuller description within the instruction on voluntary manslaughter. Appellant's Brief, pp. 32–33.[7] We disagree. Our concern in *Hart* was that the jury be made aware that mitigating circumstances are relevant to the question of whether a defendant is guilty of first- or third-degree murder (because they go to the issue of whether malice has been shown), rather than mistakenly confining their consideration of such circumstances to the question of whether defendant is guilty of voluntary manslaughter. As set forth above, the trial court in appellant's trial clearly informed the jury that mitigating circumstances can negate a finding of malice necessary to convict for first- or third-degree murder. In its charge on voluntary manslaughter, the court defined in detail what those mitigating circumstances might be. Therefore, when the jury began its deliberations, it knew both that mitigating circumstances must be considered in determining guilt or innocence on *all* the crimes charged, first- and third-degree murder as well as voluntary manslaughter, and what those mitigating circumstances were.

We find that the trial court's progression charge was proper. We therefore find that appellant has not met the *Lawson* standard of showing a miscarriage of justice or his innocence as to this claim.

---

7. We note that appellant restricts his argument to the mitigating circumstance of "heat of passion," *see* Appellant's Brief, pp. 27, 32–33, 38; he has never suggested that the trial court should have given an "unreasonable belief" instruction.

**542**

All of appellant's claims being barred by *Commonwealth v. Lawson,* we affirm the denial of his PCRA petition.

Order affirmed.