George E. BANKS, Petitioner,

v.

Martin HORN, Commissioner, Pennsylvania Department of Corrections; James Price, Superintendent of the State Correctional Institution at Greene; Joseph P. Mazurkiewicz, Superintendent of the State Correctional Institution at Rockview; and the Commonwealth of Pennsylvania, Respondents.

No. 4:CV–96–0294.

United States District Court, M.D. Pennsylvania.

May 28, 1996.

Al Flora, Jr., William Ruzzo, Office of Public Defender, Wilkes–Barre, PA, for petitioner.

Peter Paul Olszeski, Jr., District Attorney, Scott C. Gartley, Assistant District Attorney, Wilkes–Barre, PA, for respondents.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On February 21, 1996, petitioner George E. Banks, an inmate at the State Correctional Institution at Greene, initiated this action with the filing of a motion to proceed *in forma pauperis*, for a stay of execution, and for the appointment of counsel. Banks was convicted in 1983 of thirteen counts of murder in the first degree in the Court of Common Pleas of Luzerne County, Pennsylvania. Twelve sentences of death were imposed following the return of the verdicts as to those charges.

Banks has pursued a direct appeal as well as post-conviction relief. *See Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467 (affirming denial of post-conviction relief), *cert. denied*, —— U.S. ——, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995). On February 15, 1996, Governor Thomas Ridge of Pennsylvania signed a warrant for the execution of Banks during the week of March 3, 1996. This court stayed the execution by Order of Court dated February 22, 1996. We granted leave for Banks to proceed *in forma pauperis* on March 12, 1996.

In our Order of Court dated February 22, 1996, we directed Banks to file his petition for a writ of habeas corpus on or before March 22, 1996, and a brief in support thereof on or before April 12, 1996. Banks filed his petition, as well as a motion for a remand and to stay these proceedings pending exhaustion of additional claims in state court. Following initial review under Rule 4 of the Rules Governing § 2254 Cases, 28 U.S.C. following § 2254, the court directed service of the petition upon respondents. In moving for remand, Banks conceded that the petition contains claims which have not been exhausted. Respondents opposed the motion by contending that the petition should be dismissed as a "mixed petition," i.e. one in which some but not all claims have been exhausted. *See Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993).

By Order # 1 of April 29, 1996, the court denied Banks' motion for remand and to stay these proceedings, holding that amendments to Title 42 of the Pennsylvania Consolidated Statutes barred further review by the state courts. Before the court is respondents' motion for reconsideration of that order, in which Banks partially concurs.

### DISCUSSION:

Respondents correctly point out that the amendments on which the court relied apply to cases in which the death penalty was imposed after January 1, 1996. Act Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, Pub.L. No. 1995–32 (SS1), § 3(2), (1995). In this case, the jury verdict was returned in 1983, and petitioner was formally sentenced in 1985. *See Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1, 3 *cert. denied*, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987). The amendments therefore do not apply to this case, and the court will reconsider its prior disposition of the motion for remand.

### I. MIXED PETITION

Generally, before presenting a petition for a writ of habeas corpus to a federal court, a person in state custody must exhaust all remedies provided in the state courts. 28 U.S.C. § 2254(b). A mixed petition, that is, one which contains both exhausted and unexhausted claims, must be dismissed. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982). However, if the unexhausted claims are procedurally barred in the state courts, the petition is not a mixed petition. *Toulson* at 987. In such an instance, "[t]he district court may not go to the merits of the barred claims, but must decide the merits of the claims that are exhausted and not barred." *Id.* (citation omitted). Be-

fore the requirement of exhaustion will be excused, state law must clearly foreclose review by the state courts of unexhausted claims. *Id.* (citing *Gibson v. Scheidemantel,* 805 F.2d 135, 139 (3d Cir.1986)).

## II. PENNSYLVANIA LAW

Under Pennsylvania law, an issue is waived for purposes of post conviction relief if the petitioner failed to raise the issue and it could have been raised before trial, at trial, on direct appeal, or in prior collateral proceedings. 42 Pa. Cons.Stat.Ann. § 9544(b). If an issue is waived, it may be presented to the state courts only under limited circumstances. 42 Pa. Cons.Stat.Ann. § 9543(a)(3)(ii), (iii).

Banks argues that the Supreme Court of Pennsylvania has lowered the waiver standard in capital cases, so that he still may present his unexhausted issues to the state courts. *See Commonwealth v. Banks,* 540 Pa. 143, 656 A.2d 467, 470 n. 7 (1995) (citing *Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38 (1994)). The policy of considering issues despite waiver discussed, by the Supreme Court in those cases refers to issues raised in the context of a petition under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons.Stat.Ann. §§ 9541 et seq., which were not raised in the trial court or on direct appeal, and not to second or successive petitions.

In *Commonwealth v. Szuchon,* 534 Pa. 483, 633 A.2d 1098 (1993), the Pennsylvania Supreme Court set forth the standard which applies to claims raised for the first time in a second or subsequent petition in the context of a capital case. It held:

> Finally, our cases require that a second or subsequent petition for post-conviction relief will not be entertained "unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107[, 112] (1988).

> This standard is met if the petitioner can demonstrate either: (a) that the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can toler-

ate, or (b) that he is innocent of the crimes charged. *Id.*

*Szuchon* at 1099–1100. This standard applies when the waived issues relate to the penalty phase of a capital trial. *See Szuchon* at 1099 (*Lawson* standard applies to claims of ineffective assistance of counsel during the penalty phase). In this case, all three issues relate to the penalty phase of the trial, so that a claim of innocence by Banks is not justification for excusing waiver.

The question before this court, then, is whether it is clear that Pennsylvania courts, applying the standard that unexhausted claims raised by a capital defendant in a second post-conviction petition must render the sentence a miscarriage of justice which no civilized society can tolerate, would consider the merits of Banks' claims.

## III. MISCARRIAGE OF JUSTICE

Unfortunately, the Pennsylvania courts have not more clearly delineated what circumstances they intend to bring within the description "miscarriage of justice"; indeed, given the multiplicity of circumstances which may arise in any given case, a specific definition probably is not possible. Perhaps the most apt description is set forth in a line of cases from the Superior Court in which a claimed error is said to be a miscarriage of justice if it "undermine[s] the truth-determining process." *Commonwealth v. Dukeman,* 413 Pa.Super. 397, 605 A.2d 418, 420, 421 (1992) (specifically relating to claims of ineffective assistance of counsel but applying standard "[c]oncurrent with our analysis pursuant to *Lawson*"; citations omitted). *See also* 42 Pa. Cons.Stat.Ann. § 9543(a)(2)(ii) (statute from which language quoted). Another way to determine more accurately the meaning of the phrase is to review cases in which claimed error has been considered under the miscarriage of justice standard.

In *Lawson,* the case in which the standard was established, the defendant claimed that his right to a speedy trial under Pa. R.Crim.P. 1100 had been violated. 549 A.2d at 109. The Supreme Court held that such an argument did not go to the fairness of the trial, but the defendant instead was seeking

to negate the obligation to stand trial. Terming such a rule a "procedural technicality," the Court held that there was no showing of a miscarriage of justice. 549 A.2d at 112.

Likewise, in *Szuchon,* the defendant argued that his trial counsel was ineffective during the penalty phase for introducing evidence of a prior conviction for robbery and for failing to object to the sufficiency of the evidence with respect to an aggravating circumstance. 633 A.2d at 1098. Without elaboration, the Supreme Court held that these claims did not render the proceedings so unfair as to constitute a miscarriage of justice. 633 A.2d at 1100.

Finally, a defendant who claimed that: (1) he was not informed of the elements of the crime for which a plea of nolo contendere was entered; (2) his speedy trial rights were violated; (3) the sentence imposed was an abuse of discretion; and (4) the sentence exceeded Pennsylvania's sentencing guidelines, did not state a basis for a finding of a miscarriage of justice. *Commonwealth v. Williams,* 442 Pa.Super. 590, 660 A.2d 614, 618–619 (1995), *allocatur denied,* —— Pa. ——, 674 A.2d 1071 (Pa.1996) (table). On the other hand, the same defendant set forth a claim which might possibly serve as a basis for a finding of a miscarriage of justice by arguing that the prosecutor had failed to abide by a plea agreement with respect to the sentence. *Id.* at 619 ("Certainly, if the prosecutor failed to adhere to the terms of the plea agreement, this would provide grounds for PCRA relief as it would be a miscarriage of justice for a person to relinquish cherished constitutional rights based on a promise that was not kept."; citation omitted). This claim was rejected because it lacked a factual, not a legal, basis. The same is true of derivative arguments by the defendant as to the expected sentence. 660 A.2d at 620.

A case similar to *Williams,* in that it involved the voluntariness of a plea, was *Commonwealth v. Ryan,* 394 Pa.Super. 373, 575 A.2d 949 (1990). The defendant claimed that he never admitted to committing the crimes at the time that he entered his guilty plea. The Superior Court held that, absent other evidence of guilt, such an admission is critical to a valid guilty plea. As in *Williams,* the Court noted the importance of the constitutional rights waived by the plea, and held that the claim that the plea was entered without a factual basis, if proven, would be a miscarriage of justice. 575 A.2d at 951. Again, the defendant was unable to establish the factual basis for his claims. 575 A.2d at 951–952.

In *Dukeman,* the defendant contended that counsel had been ineffective for failing to raise issues of entrapment and identification. The Superior Court reviewed the merits of these claims after reciting the *Lawson* standard, 605 A.2d at 420, 421–424, indicating that the claims would amount to a miscarriage of justice if established. As with other cases decided under the provision of the Post Conviction Relief Act dealing with claims of ineffective assistance, the standard was whether the claims undermined the truth-determining process. *See* 605 A.2d at 421 (collecting cases).

In *Commonwealth v. Hoyman,* 385 Pa.Super. 439, 561 A.2d 756, 758–759 (1989), the Superior Court held that, due to the importance and fundamental nature of the right to appeal, there was a miscarriage of justice when trial counsel failed to take a direct appeal despite the defendant's request to do so.

In *Commonwealth v. Loach,* 421 Pa.Super. 527, 618 A.2d 463, *allocatur denied,* 535 Pa. 655, 634 A.2d 219 (1993) (table), the Superior Court reviewed a number of issues under the *Lawson* standard. Although it found that the defendant had not met the standard, its review included review of the factual basis for each claim as well as the claim itself. For instance, the Court held that a claim that the trial court erred in failing to give a lesser included offense instruction to the jury was without merit because the charge actually was given. 618 A.2d at 467–468. It is not clear from this recitation whether the failure to give the charge, if proven, would have amounted to a miscarriage of justice because the Court assumed that the defendant's reading of the applicable case law was correct. 618 A.2d at 468. The approach taken in this case was to deny review of the claim if it

appeared obvious from the record that there was no factual basis for the claim. *Id.*

However, another claim was denied on a legal, as opposed to factual, basis. The defendant argued that a progression charge given by the trial court hampered the jury's "mercy-dispensing" power. Since the *Lawson* standard applies to a denial of justice and not mercy, the claim was not considered on the merits. 618 A.2d at 468. The defendant's claim that the progression charge interjected the trial judge into jury deliberations was rejected because the charge simply provided a structure to the deliberations and helped to ensure that the jury would consider all of the important aspects of the prosecution's case. 618 A.2d at 469.

The Superior Court did reach the merits, legally and factually, of a claim that the trial court should have instructed the jury on mitigating factors prior to its instruction on first degree murder. The court concluded that the instruction did not have to be given prior to the murder instruction, and that the charge fully informed the jury of the factors to be considered. 618 A.2d at 469–471. This review suggests that a failure to instruct the jury adequately that the element of malice for a first degree murder charge is negated by a finding that the defendant acted in the "heat of passion" would be a miscarriage of justice. *See esp.* 618 A.2d at 470 (quoting trial court's charge to jury).

### IV. FACTORS CONSIDERED

Having reviewed these cases, it appears that three factors are implicit in the review of each set of circumstances. First, the claim must relate to the merits of the case, and not to some manner of avoiding prosecution, such as the state speedy trial rule. *See esp. Lawson.* Second, the claimed error must impair: (a) the ability of the defendant to present his case or rebut the prosecution's case, (b) the ability of the factfinder to consider all of the relevant facts and apply the appropriate law, or (c) the ability of the court(s) to determine the law as it relates to both the defendant's presentation and the factfinder's consideration of the case. *See esp. Dukeman* (claims of ineffective assistance of counsel must relate to the

truth-finding process); *Ryan* (court must have a factual basis for a guilty plea); *Hoyman* (denial of the right to appeal); *Loach* (jury instructions). Third, the claimed error must have a significant impact on the outcome of the proceedings. *See esp. Hoyman* (discussing importance of appellate rights); *Ryan* (discussing importance of factual basis for a guilty plea; because of clear guilt, remaining issues not reviewed).

In addition to these factors, the context of the issues raised must be kept in mind. In this case, the issues raised relate to the penalty phase of a capital murder trial, so that the reviewing court would look less at the innocence of the petitioner and more at the impact of the claimed error on the jury's decision to impose the death penalty.

With these considerations in mind, we turn to Banks' unexhausted claims.

### V. UNEXHAUSTED CLAIMS

Banks recites three claims which have not been exhausted in the state courts. They are:

(1) Whether the trial court's failure to voir dire prospective jurors on whether they would automatically impose death upon a finding of First Degree Murder was in violation of *Morgan v. Illinois,* [504] U.S. [719], 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992);

(2) Whether the trial court's failure in the capital sentencing hearing to instruct the jury on life imprisonment without parole contravenes the United States Supreme Court's decision in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 218[7], 129 L.Ed.2d 133 (1994)[,] and whether such an instruction is compelled by the Eighth Amendment, and

(3) Whether the trial court's failure to instruct the jury they could render a verdict of life imprisonment based upon a finding of mercy engendered from the evidence violated the United States Supreme Court's dictates in *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) [,] and whether such an instruction is compelled by the Eighth Amendment.

Petitioner's Brief in Support of Petition for Writ of Habeas Corpus at 31.

### A. Morgan Issue

In *Morgan*, the Supreme Court held that a trial court errs in refusing inquiry, during voir dire, into whether a prospective juror would automatically impose the death penalty if a verdict of guilty of a capital offense was returned. It did not hold that the trial court must make this inquiry absent a request from the defendant.

In *Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199, 204 (1994), the Supreme Court of Pennsylvania held that there was no ineffective assistance of counsel in not attempting to "life qualify" the jury in this manner. The Court held that the failure to do so did not mean that counsel failed to assure the selection of a fair and impartial jury, and added that the claim was meritless. The conclusion that failure to life-qualify the jury does not mean that the make-up of the jury is unfair or impartial has been recited in a long line of Pennsylvania cases. *Id.*, 647 A.2d at 203–204. *See also Riley v. Snyder*, 840 F.Supp. 1012, 1029–1030 (D.Del.1993) (it is the defendant's responsibility to request further voir dire if impartiality of juror is in question), *vacated on other grounds*, 62 F.3d 86 (3d Cir.1995).

■ Based on *Blount* and the cases cited therein, it is clear that a Pennsylvania court would not find a miscarriage of justice for failure of the trial court, in the absence of a defense request, to ask potential jurors if they would automatically impose a death penalty.

### B. Simmons Issue

■ In *Simmons*, the Supreme Court of the United States held that, when a capital defendant's future dangerousness is at issue and state law precludes release on parole, the defendant is entitled to have the jury instructed as to parole ineligibility. Since *Simmons* was decided in 1994, the case was not decided until well after Banks' conviction and sentencing, and would not apply unless the decision was retroactive.

Although this court has disagreed with this conclusion, the Supreme Court of Pennsylvania has ruled that *Simmons* is not retroactive. *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 889 and 889 n. 22, *cert. denied*, — U.S. ——, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995). State courts, of course, must follow this decision, so that a Pennsylvania court would not hold that failure to follow *Simmons* constitutes a miscarriage of justice.

In *Carpenter v. Vaughn*, 888 F.Supp. 658, 666 (M.D.Pa.1995), this court reviewed the issue of the retroactive application of *Simmons* and held that it is retroactive because the opinion itself states that the conclusion of the court was compelled by prior precedent. Despite the ruling of the Supreme Court of Pennsylvania, we adhere to our prior ruling.

The Supreme Court of Pennsylvania cited *Allen v. Hardy*, 478 U.S. 255, 257–258, 106 S.Ct. 2878, 2879–2880, 92 L.Ed.2d 199 (1986), in finding that *Simmons* was not retroactive. *Christy*, 656 A.2d at 889. A more recent decision is *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989), in which the Supreme Court of the United States held that a case is retroactive if it does not announce a "new rule." A case announces a "new rule" if the result was not dictated by precedent existing at the time the defendant's conviction became final.

In *Simmons*, the Supreme Court of the United States specified that an opinion issued in 1977, as reaffirmed in 1986, compelled the conclusion reached by the Court. 512 U.S. at —— – ——, ——, 114 S.Ct. at 2194–2195, 2200, 129 L.Ed.2d at 143, 150. To the extent that precedent in Pennsylvania was inconsistent with the earlier opinions of the Supreme Court, the Supreme Court's opinion controls as to constitutional issues. When the Supreme Court of Pennsylvania held, then, that *Simmons* was a new rule because it conflicted with prior state precedent, it elevated state law over the opinion of the Supreme Court. Under this reasoning, any rule announced by the Supreme Court is not retroactive in a state with a contradictory rule, while the rule would be retroactive in any state with a consistent rule. In fact, if a rule announced by the Supreme Court of the

United States could not be retroactive in any state with a conflicting rule, there would be no reason ever to consider retroactivity.

■ For these reasons, we believe that it is the precedent of the Supreme Court of the United States which dictates whether a constitutional rule is retroactive, not the law of a state.

The Supreme Court has held, however, that a good-faith interpretation of its precedents by a state court will be valid as against a later decision. *Graham v. Collins,* 506 U.S. 461, 466–467, 113 S.Ct. 892, 897–898, 122 L.Ed.2d 260, 269–270, *reh'g denied,* 507 U.S. 968, 113 S.Ct. 1406, 122 L.Ed.2d 778 (1993). The Supreme Court of Pennsylvania did not rely on or even refer to existing federal precedent, however, when it ruled that a jury in a capital case may not consider the availability of parole when deliberating during the sentencing phase. Instead, it relied on its own precedent which dated from well before the Supreme Court precedent. *Compare Commonwealth v. Strong,* 522 Pa. 445, 563 A.2d 479, 486 (Pa.1989) (citing *Commonwealth v. Johnson,* 368 Pa. 139, 81 A.2d 569, 573 (1951)), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990), *with Simmons* (citing *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) ("reaffirming" *Gardner* )). The later decisions of the Supreme Court of Pennsylvania, then, cannot be said to have been a good-faith interpretation of precedent of the Supreme Court of the United States existing at the time Banks was convicted.

The Supreme Court of Pennsylvania also noted that retroactive application of *Simmons* would subject every death sentence in Pennsylvania to collateral attack. *Christy,* 656 A.2d at 889 n. 23. Actually, only those cases in which the Commonwealth argues to the jury the defendant's future dangerousness as an aggravating factor would be subject to such attack, at least such an attack with merit. This type of case would be extremely unusual in Pennsylvania, since the list of aggravating circumstances to be considered by a jury does not include future dangerousness, but is limited to events occur-ring before or during the commission of the capital offense. *See* 42 Pa. Cons.Stat.Ann. § 9711(d).

■ Despite our disagreement with the Supreme Court of Pennsylvania concerning the retroactivity of *Simmons,* we find that a state court would find no miscarriage of justice in the fact that the jury in Banks' trial was not instructed that state law precludes parole from convictions for capital offenses. Banks argues that the prosecution's argument for the death penalty based on the aggravating factors of a significant history of felony convictions involving the use or threat of violence and a conviction of another offense which was committed either before at the time of the instant offense, created a likelihood that the jury would infer a propensity for future dangerousness. We disagree.

First, this argument presumes that the jury would make this inference, a presumption not based on any demonstrable evidence. Second, the argument is not consistent with the ruling in *Simmons:* the prosecution must actually make an argument as to future dangerousness. Nothing in *Simmons* states that its ruling applies when a jury somehow might infer future dangerousness (an inference which can be drawn in virtually any case of first degree murder: if the defendant did it once, he or she is liable to do it again). Banks' argument effectively would eliminate the distinction between cumulative punishment for past conduct and future dangerousness. Most importantly, Banks simply does not show that the argument of future dangerousness was made.

It also should be noted that nowhere does Banks contend that he requested an instruction concerning parole ineligibility. In *Simmons,* the defendant had requested such an instruction. 512 U.S. at ———–———, 114 S.Ct. at 2190–2191, 129 L.Ed.2d at 139–140. Moreover, the language of the opinion indicates that the defendant must make such a request before his due process rights are implicated. *See* 512 U.S. at ———–———, 114 S.Ct. at 2196–2197, 129 L.Ed.2d at 145–146 (if future dangerousness at issue, "due process requires that [the defendant] be allowed to bring [parole ineligibility] to the jury's

attention ...”; plurality opinion of Blackmun, J.); 512 U.S. at ——, 114 S.Ct. at 2198, 129 L.Ed.2d at 147 ("the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole"; Souter, J., concurring, joined by Stevens, J.); 512 U.S. at ——, 114 S.Ct. at 2199, 129 L.Ed.2d at 149 (when future dangerousness at issue, "the defendant's right to be heard means that he must be afforded an opportunity to rebut the argument"; Ginsburg, J., concurring); 512 U.S. at ——, 114 S.Ct. at 2201, 129 L.Ed.2d at 151 (when future dangerousness at issue and only alternative is life without parole, "due process entitles the defendant to inform the capital jury—by either argument or instruction—that he is parole ineligible"; O'Connor, J., concurring, joined by Rehnquist, C.J., and Kennedy, J.). Absent a request, Banks had no right to an instruction on parole ineligibility, and a Pennsylvania court would find no miscarriage of justice in failing to give such a charge absent a request.

### C.  Brown Issue

The final unexhausted claim raised by Banks relates to the decision of the Supreme Court of the United States in *Brown*. In that case, the trial court instructed the jury that, in its deliberations in the penalty phase of a capital trial, it should not base its verdict on " 'mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.' " 479 U.S. at 542, 107 S.Ct. at 839 (quoting jury charge by trial court). The Court determined that the instruction did not violate the Constitution because it simply directed the jury to base its verdict on evidence actually presented and not on irrelevant issues. 479 U.S. at 543, 107 S.Ct. at 840. Nothing in *Brown* requires the trial court, in the absence of either a request or evidence to support the request, to instruct the jury that mercy is a proper consideration.

A similar argument was raised by the defendant in *Commonwealth v. Rainey*, 540 Pa. 220, 656 A.2d 1326, *cert. denied,* —— U.S. ——, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995). The Supreme Court of Pennsylvania held that, so long as the proper instructions concerning aggravating and mitigating factors

are given by the trial court, including the "catchall" provision of 42 Pa. Cons.Stat.Ann. § 9711(e)(8), there is no error in not providing a further instruction on mercy. In fact, any further instruction on mercy would be error, since a finding of mercy must be made within the statutory framework of balancing aggravating and mitigation factors. 656 A.2d at 1333–1334.

In addition to *Rainey*, the Supreme Court of Pennsylvania has held that, when the trial court has charged the jury with respect to § 9711(e)(8), the trial court is not required to instruct the jury that it may impose a life sentence for any reason whatever, including mercy. Such a charge "would inject arbitrariness and capriciousness into the capital sentencing process." *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1322 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1389, 128 L.Ed.2d 63 (1994).

> Appellant was allowed to present and argue any evidence which was relevant and admissible in an attempt to convince the jury that the death sentence should not be imposed in his case. That is all that is constitutionally required.

*Id.* (citations omitted).

■■■■ These cases indicate that the law of Pennsylvania mirrors that found in *Brown* to pass constitutional muster. The trial court may instruct the jury that it may not be swayed by "mere" mercy, that is, mercy not supported by evidence in the record. The court must, however, instruct the jury as to the statutory scheme for weighing aggravating and mitigating factors. So long as the scheme permits the jury to reject the death penalty based on record evidence, and the manner of applying the scheme is correctly charged, there is no constitutional violation. An additional charge on mercy is not required, and certainly nothing in *Brown* or any Pennsylvania decision appears to require such a charge when no request is made (Banks raises no allegation that he requested an additional mercy charge).

■■■■ Finally, as noted in *Commonwealth v. Loach, supra,* the standard for review of a serial petition under the Post Conviction Relief Act is a denial of justice and not mercy.

We conclude that a Pennsylvania court would not find a miscarriage of justice in the failure of the trial court, *sua sponte,* to charge the jury that it could refuse to impose the death penalty based on a finding of mercy engendered from the evidence under § 9711(e)(8).

## VI. *TOULSON STANDARD*

The standard of review recited in *Toulson* is that state law must clearly foreclose review by the state courts before a federal district court will excuse the requirement of exhaustion. We recognize that the Third Circuit in *Toulson* indicated that it is reluctant to predict foreclosure under the standard applied in New Jersey, "fundamental injustice." 987 F.2d at 987–988.

In this instance, the Pennsylvania courts have considered issues identical to those raised by Banks, or at least nearly identical issues, in other cases, and either ruled in a manner contrary to the position taken by Banks, or in such a manner that the reasoning supporting the decision leads to a contrary result. Since Pennsylvania courts already have ruled against the positions taken by Banks, it cannot be said that a Pennsylvania court would rule that not permitting Banks to file a serial petition in order to present these issues would constitute a miscarriage of justice as the term is used by the Pennsylvania courts.

We conclude that the motion for remand should be denied due to the procedural bar, as no Pennsylvania court would find a miscarriage of justice under the facts of this case and considering the issues raised by Banks. The unexhausted issues are procedurally barred under Pennsylvania law and, pursuant to *Toulson,* Banks' petition therefore is not a mixed petition under *Rose.* The court will not grant the dismissal requested by respondents.