COMMONWEALTH of Pennsylvania, Appellee

v.

Vincent Wesley HALLMAN, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 16, 2013.

Filed May 29, 2013.

James M. McClure, Lewiston, for appellant.

Gregory A. Jackson, Assistant District Attorney, Huntingdon, for appellee.

BEFORE: BOWES, GANTMAN and OLSON, JJ.

OPINION BY OLSON, J.:

Appellant, Vincent Wesley Hallman, appeals from the order entered on May 23, 2012. After careful consideration, we affirm.

Appellant, an inmate at the State Correctional Institute in Huntingdon, Pennsylvania, was accused of assaulting a corrections officer while the officer was performing his duties. As a result, the Commonwealth charged Appellant with a number of crimes, including aggravated assault under 18 Pa.C.S.A. § 2702(a)(2) and aggravated assault under 18 Pa. C.S.A. § 2702(a)(3). In relevant part, these crimes are defined as follows:

> (a) **Offense defined.**—A person is guilty of aggravated assault if he:
>
>      . . .
>
> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;
>
> (3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]

. . .

(c) **Officers, employees, etc., enumerated.**—The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:

. . .

(9) Officer or employee of a correctional institution, county jail or prison. . . .

18 Pa.C.S.A. § 2702.

On March 17, 2011, Appellant proceeded to a jury trial on the two aggravated assault charges. During the trial, the corrections officer testified that, on the night of the assault, he directed Appellant to sit in a particular area of the prison. N.T. Trial, 3/17/11, at 30. The corrections officer testified that Appellant refused the order and then made a threatening gesture to the officer. *Id.* at 30–31. When the officer attempted to restrain Appellant, Appellant threw multiple punches at the officer—striking the officer's "chin, jaw, chest, and . . . left ribs." *Id.* at 36. Moreover, the officer testified that Appellant struck him with such force that Appellant broke one of the officer's ribs. *Id.* at 37–38. The rib injury, the officer testified, made it "difficult for [him] to breathe," caused him to suffer pain that—on a scale of one to ten—was a seven or an eight, and required him to miss three months of work to heal. *Id.* at 37–39, 49, and 51.

Following the presentation of evidence, the trial court instructed the jury on both counts of aggravated assault. N.T. Trial, 3/17/11, at 130–135. Moreover, the trial court instructed the jury on the procedures it should follow in deliberating and rendering a verdict. As the trial court declared:

Now, ladies and gentlemen, we are to the point where I discuss with you the crimes. And strange as it may seem, you will be considering, when you retire, two counts of the crime of aggravated assault. **So that it is clear, this defendant can only be found guilty of one of the two or not guilty of both [counts].**

. . .

**Your first duty will be to consider the crime of aggravated assault with respect to the infliction or the attempt to inflict serious bodily injury. If you were to conclude that the Commonwealth has not established beyond a reasonable doubt that crime, then you would turn your attention to Count [II].** And as I pointed out to you, Count [II] alleges that the defendant attempted to cause or that he actually caused bodily injury to the corrections officer.

*Id.* at 130 and 134 (emphasis added).

The above instruction is generally known as an "acquittal-first progression charge" and, although we will explain this type of charge below, we note that our Court has specifically approved the use of such an instruction. *See Commonwealth v. Hart,* 388 Pa.Super. 484, 565 A.2d 1212, 1216–1217 (1989); *Commonwealth v. Loach,* 421 Pa.Super. 527, 618 A.2d 463, 469 (1992) (*en banc*). Further, neither the Commonwealth nor Appellant objected to the trial court's instruction. Certainly, after the trial court finished instructing the jury, the trial court asked: "[n]ow does either counsel want to bring to my attention any errors?" *Id.* at 138. Both counsel specifically responded "No, Your Honor."[1] *Id.*

---

1. We do not necessarily mean to imply that the trial court erred in giving the progression charge; our intention is merely to show that the parties were given an opportunity to object to the charge and did not do so.

The trial court then provided the jury with the following verdict slip:

AND NOW, this 17th day of March, A.D., 2011, we the jury impaneled in the above captioned case find as follows:

COUNT I: Aggravated Assault

(Serious Bodily Injury)

_____ Guilty _____ Not Guilty

**If you find the Defendant guilty of Count I, you need go no further and should return to the Courtroom with your verdict.** On the other hand, if you find Defendant not guilty of Count I, you must proceed to and decide whether or not the Commonwealth has proven beyond a reasonable doubt each of the elements of Count II.

COUNT II: Aggravated Assault

(Bodily Injury)

_____ Guilty _____ Not Guilty

Verdict Slip, 3/17/11, at 1 (emphasis added).

The jury found Appellant guilty of Count I (which was aggravated assault under 18 Pa.C.S.A. § 2702(a)(2)) and, in accordance with the trial court's instructions, the jury "return[ed] to the Courtroom with [its] verdict." Verdict Slip, 3/17/11, at 1. The jury thus made no specific determination as to whether Appellant was either guilty or not guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(3). The jury's verdict—finding Appellant guilty of "Count [I], aggravated assault, serious bodily injury"—was then recorded and the jury was discharged. *See* N.T. Trial, 3/17/11, at 140.

Following Appellant's sentencing, Appellant filed a motion in arrest of judgment. Within this post-sentence motion, Appellant claimed that the evidence was insufficient to support his aggravated assault conviction because "[n]o competent evidence was presented by the Commonwealth that the [c]orrections [o]fficer suffered a serious bodily injury nor could a jury reasonably conclude that [Appellant] had the specific intent to attempt to cause a serious bodily injury." Appellant's Post-Sentence Motion, 5/27/11, at 1–2. The trial court agreed that the evidence was insufficient to support Appellant's conviction. Trial Court Order, 9/8/11, at 1; Trial Court Memorandum, 9/8/11, at 4. Therefore, on September 8, 2011, the trial court entered an order granting Appellant's motion in arrest of judgment "with respect to the charge of [a]ggravated [a]ssault as that crime is defined in 18 [Pa.C.S.A. § ] 2702(a)(2)." Trial Court Order, 9/8/11, at 1.

The Commonwealth did not appeal the trial court's ruling.[2] Instead, after the trial court's ruling, the Commonwealth filed a motion to re-schedule the case for trial on the charge of aggravated assault, as that crime is defined in 18 Pa.C.S.A. § 2702(a)(3). Appellant responded by filing a Motion to Dismiss on the Basis of Double Jeopardy. Appellant's Motion to Dismiss, 1/27/12, at 1–3. As Appellant claimed, if the Commonwealth were to retry him on the Section 2702(a)(3) aggravated assault charge, Appellant would be "twice [placed] in jeopardy in violation of his rights under the Fifth Amendment to the United States Constitution as well as

2. *See Commonwealth v. Shenkin,* 337 Pa.Super. 517, 487 A.2d 380, 382–383 (1985) ("the Commonwealth may appeal an order arresting judgment . . . because reversal [of the trial court's order] would not require a retrial"); *Evans v. Michigan,* —— U.S. ——, 133 S.Ct. 1069, 1081 n. 9, 185 L.Ed.2d 124 (2013) ("[i]f a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court's acquittal, because reversal would result in reinstatement of the jury verdict of guilty, not a new trial").

the Constitution of the Commonwealth of Pennsylvania." *Id.* at 2. The trial court denied Appellant's motion on May 23, 2012 and, on June 11, 2012, Appellant filed a timely notice of appeal to this Court.[3] Appellant now raises the following claim to this Court:[4]

Whether double jeopardy protections afforded by the United States and Pennsylvania constitutions prohibit the Commonwealth from re-prosecuting Appellant[?]

Appellant's Brief at 4.

■ "[T]he question of whether a defendant's constitutional right against double jeopardy [would be infringed by a successive prosecution] is a question of law. Hence, [when reviewing this issue,] our scope of review is plenary and our standard of review is *de novo.*" *Commonwealth v. Kuykendall,* 2 A.3d 559, 563 (Pa.Super.2010).

The proscription against twice placing an individual in jeopardy of life or limb is found in both the Fifth Amendment to the United States Constitution, as well as in Article 1, Section 10 of the Pennsylvania Constitution. *Commonwealth v. States,* 595 Pa. 453, 938 A.2d 1016, 1019 (.2007).

Yet, as the Pennsylvania Supreme Court has held, Pennsylvania's Double Jeopardy Clause "involves the same meaning, purpose, and end [as the Double Jeopardy Clause in the United States Constitution], thus, [Pennsylvania's clause] has generally been construed as coextensive with its federal counterpart."[5] *Commonwealth v. McGee,* 560 Pa. 324, 744 A.2d 754, 756 n. 2 (2000) (internal quotations and citations omitted); *see also Commonwealth v. Fletcher,* 580 Pa. 403, 861 A.2d 898, 912 (2004) ("the double jeopardy protections afforded by the United States and Pennsylvania [c]onstitutions are coextensive").

■ "The Double Jeopardy Clause embodies three protections: [i]t protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Commonwealth v. Kemmerer,* 526 Pa. 160, 584 A.2d 940, 942 n. 4 (1991) (internal quotations and citations omitted); *see also Monge v. California,* 524 U.S. 721, 727–728, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998). In the context of successive prosecutions:

3. "[A] defendant can immediately appeal as of right an order that denies a non-frivolous motion to dismiss on state or federal double jeopardy grounds." *Commonwealth v. Orie,* 33 A.3d 17, 20–21 (Pa.Super.2011); *Commonwealth v. Fields,* 491 Pa. 609, 421 A.2d 1051, 1052 n. 1 (1980) ("[t]he denial of a defendant's pretrial motion to dismiss an indictment on double jeopardy grounds is final and directly appealable"); *Commonwealth v. Haefner,* 473 Pa. 154, 373 A.2d 1094, 1095 (1977) ("pretrial orders denying double jeopardy claims are final orders for purposes of appeal"); *see also* Pa.R.A.P. 313 cmt. (stating that an order denying a pre-trial motion to dismiss on double jeopardy grounds is immediately appealable as a collateral order); *Commonwealth v. DeLong,* 879 A.2d 234, 237 (Pa.Super.2005) (declaring that an order denying a non-frivolous motion to dismiss on double jeopardy grounds is an interlocutory order, but immediately appealable as of right under Pa.R.A.P. 311).

4. The trial court did not order Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Nevertheless, Appellant filed a Rule 1925(b) statement and preserved the claim currently raised on appeal.

5. The Double Jeopardy Clause of the United States Constitution provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Pennsylvania's Double Jeopardy Clause declares: "No person shall, for the same offense, be twice put in jeopardy of life or limb." Pa. Const. art. 1, § 10.

The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Serfass v. United States,* 420 U.S. 377, 387–388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (internal quotations, citations, and corrections omitted).

■■■ Thus, under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Commonwealth v. Constant,* 925 A.2d 810, 815 (Pa.Super.2007). In a criminal jury trial, jeopardy attaches when the jury is sworn. *Commonwealth v. Anderson,* 38 A.3d 828, 845 (Pa.Super.2011) (internal citations and quotations omitted).

■■ Moreover, "because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). As the United States Supreme Court has explained:

The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Id.* at 503–505, 98 S.Ct. 824 (internal footnotes omitted).

■■ Notwithstanding the above right, the Double Jeopardy Clause "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). "If the law were otherwise, the purpose of the law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again." *Id.* (internal quotations and citations omitted).

In this case, the jury originally found Appellant guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(2). However, following sentencing, Appellant successfully petitioned the trial court to arrest judgment on his conviction, on the basis of evidentiary insufficiency. Since the time for filing a notice of appeal from this order has now passed, the trial court's order—granting Appellant's motion in arrest of judgment—is final. Therefore, pursuant to established precedent, the trial court's order constitutes an "acquittal" on the charge of aggravated assault under Section 2702(a)(2) and the Double Jeopardy

Clause plainly prevents the Commonwealth from retrying Appellant on this charge. *See United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) ("a ruling by the [trial] court that the evidence is insufficient to convict" is an "acquittal"); *Commonwealth v. Fitzhugh,* 360 Pa.Super. 217, 520 A.2d 424, 428 (1987) ("an arrest of judgment entered following a jury verdict of guilt does not become the functional equivalent of a verdict of acquittal until" the order becomes final).

▆ The issue currently on appeal is whether the Double Jeopardy Clause prevents the Commonwealth from retrying Appellant on aggravated assault under Section 2702(a)(3). We conclude that the Double Jeopardy Clause does not prevent a retrial since—as a result of the progression instruction and the jury's finding of guilt on the charge of aggravated assault under Section 2702(a)(2)—the jury was **absolutely prevented** from rendering a verdict on the Section 2702(a)(3) charge. As such, Appellant's jeopardy on the Section 2702(a)(3) charge did not terminate when the first jury was discharged.

As explained above, Appellant was originally charged with aggravated assault under 18 Pa.C.S.A. § 2702(a)(2) and aggravated assault under 18 Pa.C.S.A. § 2702(a)(3). Further, during Appellant's first trial, the trial court instructed the jury as to both counts. However, during the jury instructions, the trial court also provided the jury with an "acquittal-first progression charge." This charge instructed the jury that: Appellant could "only be found guilty of one of the two [counts] or not guilty of both [counts];" if the jury found Appellant guilty of aggravated assault under Section 2702(a)(2), the jury was not to consider Appellant's liability under Section 2702(a)(3); and, the jury could not even "turn [its] attention to" Appellant's liability under Section

2702(a)(3) unless the jury first acquitted Appellant of aggravated assault under Section 2702(a)(2). *See* N.T. Trial, 3/17/11, at 130 and 134; *see also* Verdict Slip, 3/17/11, at 1.

On appeal, Appellant does not claim that the trial court erred in giving the progression charge. Indeed, as stated above, this Court has specifically held that a progression charge is proper under certain circumstances. We have explained:

While the jury must serve as the sole finder of fact, the trial court has a duty to frame legal issues for the jury and instruct the jury on the applicable law. One method by which the court may choose to clarify issues for the jury is to direct the jury to consider at the outset the most serious form of the offense with which the defendant has been charged. If the jury were first to consider a less serious form of the offense, it might return a verdict of guilty of the lesser charge without determining whether the Commonwealth also proved the additional facts necessary to establish the more serious crime. By directing the jury to begin its deliberations with the greater offense, the judge can help to ensure that the jury will bring its independent judgment to bear on all important aspects of the Commonwealth's case. Thus, as a general rule, a progression charge is proper where the defendant is charged with different forms or degrees of the same crime. [*See* ] *Pharr v. Israel,* 629 F.2d 1278 (7th Cir.1980) *cert. denied,* 449 U.S. 1088, 101 S.Ct. 880, 66 L.Ed.2d 815 (1981) (charge that jury should consider lesser degrees of homicide only if defendant acquitted of first degree murder did not violate right to jury trial); *Commonwealth v. Sanders,* 380 Pa.Super. 78, 551 A.2d 239 (1988) (charge that jury should consider second degree robbery charge only if

defendant was acquitted of first degree robbery did not invade province of jury). *Hart*, 565 A.2d at 1216 (some internal citations omitted); *see also Loach*, 618 A.2d at 469 (a "progression charge [is] simply a structure for the jury's deliberations where multiple forms or degrees of the same crime [are] charged"); *Commonwealth v. Sneeringer*, 447 Pa.Super. 241, 668 A.2d 1167, 1170 (1995) ("[a]s a general rule, [the Superior] Court has held that a progression charge is proper where a defendant is charged with different forms or degrees of the same crime").[6]

Although a progression charge may only be given with respect to greater and lesser included offenses, Appellant has conceded on appeal that aggravated assault under Section 2702(a)(3) is a lesser included offense of aggravated assault under Section 2702(a)(2). Appellant's Brief at 11 ("[t]he jury in this case was presented the issue of the lesser included offense but did not return a verdict due to the [trial c]ourt's instruction"). Therefore, we assume—for purposes of this appeal—that aggravated assault as defined by Section 2702(a)(3) is a lesser included offense of aggravated assault under Section 2702(a)(2).[7] *See, e.g., Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 396 (Pa.Super.2011) ("this Court may not act as counsel for an appellant and develop arguments on his behalf").

In analyzing Appellant's issue, it is useful to explain what the current appeal does not concern. First, in this case, Appellant has never been "acquitted" of the Section 2702(a)(3) offense. As the United States Supreme Court has explained, an "acquittal" encompasses "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans*, —— U.S. at ——, 133 S.Ct. at 1074–1075. Here, the jury found Appellant guilty of aggravated assault under Section 2702(a)(2) and, as a result of the trial court's unobjected-to progression instruction, the jury was precluded from rendering a verdict on the Section 2702(a)(3) charge. Thus, the jury did not render an explicit verdict of conviction or acquittal on the Section 2702(a)(3) charge.[8]

Moreover, even though the trial court later acquitted Appellant of aggravated assault under Section 2702(a)(2), the trial

---

**6.** Further, when a defendant is charged with greater and lesser included offenses, the vast majority of jurisdictions in the United States either authorize or require the use of a progression charge. *See* Jay M. Zitter, Annotation, *When Should Jury's Deliberation Proceed from Charged Offense to Lesser-Included Offense*, 26 A.L.R.5th 603 (2013) (collecting cases); *see also State v. Labanowski*, 117 Wash.2d 405, 816 P.2d 26, 32–36 (1991) (explaining the instruction and collecting cases); *United States v. Tsanas*, 572 F.2d 340 (2nd Cir.1978) (same). Thus—while some jurisdictions require an "acquittal" of the greater charge before the jury may consider a lesser included offense and while some jurisdictions require only that the jury determine it "cannot agree" on the greater charge prior to considering the lesser charge (and while some jurisdictions allow for variations in the "acquittal-first" or "cannot agree" procedures)— the vast majority of jurisdictions approve of a

charge instructing the jury that, if the jury finds the defendant guilty of the greater crime, the jury is not permitted to render a verdict on the lesser included offense. *Labanowski*, 816 P.2d at 32–36.

**7.** Again, we do not necessarily suggest that Appellant's concession was incorrect. Rather, we simply hold that—as a result of Appellant's concession—consideration of the issue is foreclosed on appeal.

**8.** Given that Appellant concedes aggravated assault under Section 2702(a)(3) is a lesser included offense of aggravated assault under Section 2702(a)(2)—and, given that the jury found Appellant guilty of the (concededly) greater offense—it appears as if the jury **would have also** found Appellant guilty of Section 2702(a)(3) if it were provided the opportunity.

court's ruling does not constitute an acquittal on the Section 2702(a)(3) charge. Indeed, such a result would only be logically possible if Section 2702(a)(2) were a lesser included offense of Section 2702(a)(3). As explained above, Appellant has conceded that the opposite is true.

Second, the case at bar does not present a situation where the jury "implicitly acquitted" Appellant of aggravated assault under Section 2702(a)(3). For example, in *Green v. United States,* Mr. Green was charged with both first- and second-degree murder and, following the presentation of evidence, the jury was given a "full opportunity" to convict Mr. Green of first-degree murder. 355 U.S. 184, 190–191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The jury, however, remained silent on the charge of first-degree murder and, instead, found Mr. Green guilty of only second-degree murder. *Id.* at 189–190, 78 S.Ct. 221.

Following his conviction, Mr. Green filed a direct appeal to the state appellate court. On this direct appeal, the state court "reversed [Mr. Green's second-degree murder] conviction because it was not supported by evidence and remanded the case for a new trial." *Id.* at 186, 78 S.Ct. 221.

During the remand proceedings, the state again charged Mr. Green with first-degree murder and, this time, Mr. Green was convicted of the crime. Mr. Green then appealed to the United States Supreme Court, claiming that his "second trial for [first-degree] murder placed [him] in jeopardy twice for the same offense in violation of the Constitution." *Id.* at 190, 78 S.Ct. 221. The United States Supreme Court agreed with Mr. Green. As the Court explained:

> Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the [gauntlet] once on that charge and the jury refused to convict him.

When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: "We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree."

*Id.* at 190–191, 78 S.Ct. 221 (internal citations and footnote omitted).

Thus, as the *Green* Court explained, its holding was premised upon the fact that—in the first trial—the jury was given a "full opportunity" to convict Mr. Green of first-degree murder. *Id.* Despite this opportunity, the jury remained silent on the first-degree murder charge and, instead, found Mr. Green guilty of only second-degree murder. *Id.* According to the *Green* Court, by remaining silent under such circumstances, the jury—in effect—"refused" to convict Mr. Green of first-degree murder and, thus, "implicitly acquitted" him of

that charge. *Id.* As the Double Jeopardy Clause protects against a second prosecution for the same offense following an acquittal, the *Green* Court held that Mr. Green could not be retried for first-degree murder. *Id.*

In the case at bar, however, the jury was **not** given a "full opportunity" to convict Appellant of aggravated assault under Section 2702(a)(3) and, thus, the jury's silence did not amount to an "implicit acquittal" as to that offense. Certainly, the trial court instructed the jury that, if it found Appellant guilty of aggravated assault under Section 2702(a)(2), the jury was **not to consider** Appellant's liability under Section 2702(a)(3). N.T. Trial, 3/17/11, at 130 and 134. Moreover, the trial court instructed the jury that it should only "turn [its] attention to" Appellant's liability under Section 2702(a)(3) **if** the jury first acquitted Appellant of aggravated assault under Section 2702(a)(2). *Id.* Therefore, after finding Appellant guilty of aggravated assault under Section 2702(a)(2), the jury was affirmatively prohibited from reaching a verdict as to the Section 2702(a)(3) charge. The jury was thus not given a "full opportunity" to render a verdict on the Section 2702(a)(3) charge and, as such, the principle enunciated in *Green* is inapplicable to the case at bar.

The Pennsylvania Supreme Court has explained another basis for an "implicit acquittal" that is inapplicable to the case at bar. As our Supreme Court has declared, "[other] courts have held that, where a jury has not been charged on lesser included offenses, an acquittal on the crime charged necessarily implies an acquittal on all lesser offenses encompassed by that charge." *Commonwealth v. Buffington,* 574 Pa. 29, 828 A.2d 1024, 1029 (2003). Here, however, the trial court expressly charged the jury on both types of aggravated assault and, thus, both counts of aggravated assault were submitted to the jury. *See* N.T. Trial, 3/17/11, at 130–135. The trial court simply instructed the jury that, if it found Appellant guilty of aggravated assault under Section 2702(a)(2), the jury was not permitted to reach a verdict on aggravated assault as defined by Section 2702(a)(3). *Id.* at 130 and 134. Regardless, since the trial court charged the jury on aggravated assault under Section 2702(a)(3), the subsequent "acquittal on [aggravated assault under Section 2702(a)(2) **did not**] necessarily impl[y] an acquittal on" the Section 2702(a)(3) charge. *Buffington,* 828 A.2d at 1029.

At the other end of the spectrum, the current appeal also does not necessarily concern a mistrial. We have explained:

> Although jeopardy attaches, and the constitutional protection against double jeopardy applies, when a jury is sworn, our courts have held that the protection against double jeopardy does not apply when the trial court grants a proper mistrial upon motion of defense counsel, or by manifest necessity.

*Commonwealth v. Young,* 35 A.3d 54, 59 (Pa.Super.2011).

In cases where the "defendant persuades the court to declare a mistrial, jeopardy continues and retrial is generally allowed [because,] in such circumstances[,] the defendant consents to a disposition that contemplates reprosecution." *Evans,* —— U.S. at ——, 133 S.Ct. at 1079. Where the defendant either does not agree to a mistrial or is silent when the trial court declares a mistrial, the Commonwealth must demonstrate that "manifest necessity" existed to declare a mistrial. We have explained the reasoning behind this higher burden as follows:

> The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a sub-

stantial interest in having his fate determined by the jury first impaneled. A failure of the lower court to consider less drastic alternatives before declaring a mistrial creates doubt about the exercise of the court's discretion and may bar re-prosecution because of double jeopardy.

*Young*, 35 A.3d at 59 (internal quotations and citations omitted).

■ Where a mistrial is properly granted, however, the Double Jeopardy Clause does not bar retrial, as a mistrial "is not an event that terminates the original jeopardy to which [the defendant] was subjected." *Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). The *Richardson* Court explained:

The double-jeopardy provision of the Fifth Amendment does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

*Id.* (internal quotations and corrections omitted), *quoting Wade v. Hunter*, 336 U.S. 684, 688–689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

Here, the trial court did not declare a mistrial as to the Section 2702(a)(3) count because the count was not mistried. Instead, in this case, the jury was simply precluded from rendering a verdict on the Section 2702(a)(3) count, as the trial court provided the jury with a progression instruction and the jury found Appellant guilty of the (concededly) greater offense. Therefore, even though the jury did not return a verdict on the Section 2702(a)(3) count, a mistrial would not have been appropriate in this case: the jury unanimously found Appellant guilty of aggravated assault under Section 2702(a)(2) and, in accordance with the trial court's explicit instructions, the jury was not permitted to render a verdict on the Section 2702(a)(3) count.

Yet, and even though the Section 2702(a)(3) count was not mistried, we conclude that the concept of continuing jeopardy applies to this case and that the Commonwealth may thus now prosecute Appellant for the alleged violation of Section 2702(a)(3). *See Richardson*, 468 U.S. at 326, 104 S.Ct. 3081; *Evans*, —— U.S. at ——, 133 S.Ct. at 1079. Indeed, the case at bar presents a situation that is closely analogous to one where, as a result of jury deadlock, a mistrial is properly declared on lesser included offenses.

As the Pennsylvania Supreme Court has explained, "in instances [where] lesser-included offenses were expressly put before the jury, but the jury was unable to reach a verdict on those offenses[,] ... the ordinary rule is that retrial on the lesser included offense is constitutionally permissible." *Buffington*, 828 A.2d at 1030. Although our Supreme Court has only had the opportunity to apply the above rule in cases of jury deadlock, we believe that our Supreme Court would

conclude that the rule is equally applicable in cases such as the one at bar. *See Vosk v. Encompass Ins. Co.*, 851 A.2d 162, 165 (Pa.Super.2004) ("[w]hen presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue as we predict our Supreme Court would") (internal quotations and citations omitted). In either case—whether because the jury deadlocked on the lesser offense or because the jury was given a "progression instruction" and found the defendant guilty of the greater offense—the lesser offense was still "expressly put before the jury" and the jury was still "unable to reach a verdict" on the lesser offense. *Buffington*, 828 A.2d at 1030. In other words, as with a mistrial, the case at bar presents a situation where the Commonwealth seeks retrial simply to prosecute a count that was charged and put before a jury—but that remained unresolved at the end of the first trial.

To be sure, one could argue that the facts before this Court present an even stronger case for retrial than jury deadlock. In cases of jury deadlock, the jury was at least provided with an opportunity to render a verdict on the charge. Here, however—as result of the progression instruction and the jury's finding of guilt on the (concededly) greater offense—**the jury was not given any "opportunity"** to reach a verdict on the Section 2702(a)(3) charge. *See Green*, 355 U.S. at 190, 78 S.Ct. 221 (where jury **was** "given a full opportunity to return a verdict," but was "dismissed without returning any express verdict on [the] charge," jeopardy terminated with the jury's discharge). Indeed, in a factually identical case, the Court of Appeals of New York persuasively reasoned:

> There is no basis in case law or in logic for treating what happened here any differently [than a mistrial]. The major

justification for permitting retrial after a jury deadlock (or appellate reversal of a conviction) is ... the practical importance of preventing every trial defect from conferring immunity upon the accused. If this societal interest is strong enough to outweigh the "embarrassment, expense and ordeal and ... continuing state of anxiety and insecurity" [ (*Green*, 355 U.S. at 187, 78 S.Ct. 221) ] endured by an accused subject to retrial after a deadlock—where the People are afforded a chance to convince a new jury to convict after having conspicuously failed to persuade the original jury to do so—it surely warrants a second trial on a charge that the first jury did not reach and therefore had no opportunity to resolve.

*Suarez v. Byrne*, 10 N.Y.3d 523, 860 N.Y.S.2d 439, 890 N.E.2d 201, 211 (2008) (some internal quotations and citations omitted).

We agree and conclude that the Double Jeopardy Clause does not prevent Appellant's retrial on the Section 2702(a)(3) count, as the original jury was prevented from rendering a verdict on the Section 2702(a)(3) charge. Since the original jury was not given a "full opportunity" to consider Appellant's liability on the Section 2702(a)(3) charge, Appellant's jeopardy did not terminate with the discharge of the first jury and "the public's interest in fair trials designed to end in just judgments" would be frustrated if retrial on the unresolved count were prohibited. *Richardson*, 468 U.S. at 326, 104 S.Ct. 3081. Retrial is thus proper.

Order affirmed.

GANTMAN, J., concurs in the result.