J-S27026-25

2026 PA Super 106

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| IYANU ELIJAH SOLOMON | : | No. 2790 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001527-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| IYANU ELIJAH SOLOMON | : | No. 2894 EDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001527-2020

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY KUNSELMAN, J.:          **FILED MAY 21, 2026**

I respectfully dissent. My learned colleagues in the Majority vacate the order denying the Commonwealth's motion to remove Iyanu Elijah Solomon from the Accelerated Rehabilitation Disposition ("ARD") program. However, this Court has held that orders denying removal from ARD are non-appealable, interlocutory orders. ***See Commonwealth v. Worzel***, 1457 EDA 2022, 2023 WL 3018876 (Pa. Super. 2023) (non-precedential decision). As a member of the unanimous panel that decided ***Worzel***, I stand by our decision. Additionally, this Court has cited ***Worzel*** with approval in ***Commonwealth v.***

_____

[*] Former Justice specially assigned to the Superior Court.

*Myers*, 325 A.3d 790, 794 n.2 (Pa. Super. 2024). Therefore, I would deny the Commonwealth's petition for allowance of appeal (docketed at 2790 EDA 2024) and would quash its notice of appeal (docketed at 2894 EDA 2024).

According to the Commonwealth's factual allegations, on February 10, 2020, Mr. Solomon was a freshman at Villanova University and a player on the football team. Campus police caught him and some of his teammates stealing clothing from an equipment room. The police arrested and charged them with burglary and related offenses.[1]

On August 11, 2020, the trial court admitted Mr. Solomon to ARD.

In March of 2021, the campus police filed three new charges against Mr. Solomon and rearrested him. A few weeks later, based on those new charges, the Commonwealth moved for Mr. Solomon's removal from ARD.

Mr. Solomon failed to appear for an April 28, 2021 ARD-removal hearing, and the trial court granted the Commonwealth's motion. A week later, on May 5, 2021, Mr. Solomon filed a motion to open the order, because he never received notice of the April 28 hearing. This 2020 case was put on the criminal trial list, but it was repeatedly continued while the 2021 case on the new charges proceeded. A jury eventually acquitted Mr. Solomon of one of the 2021 charges, and the Commonwealth filed *nolle prosequi* on the others.

_____

[1] **See** 18 Pa.C.S.A. §§ 3502(a)(4), 3503(a)(11), 3921(a), and 3925(a).

On May 3, 2024, this 2020 case resumed. The court scheduled a hearing on Mr. Solomon's outstanding motion to open the April 28, 2021 Order removing him from ARD. Both sides submitted briefs prior to the hearing.

Seven weeks later, the trial court convened a hearing on Mr. Solomon's motion to open. At the beginning of the hearing, the trial court asked whether the Commonwealth could prove that Mr. Solomon received notice of the original removal hearing. *See* N.T., 6/27/24, at 3-4. The Commonwealth admitted it could not, and the court said, "if you don't have notice, then it takes us back in time, so . . . are you all prepared to do the removal hearing today . . . ?" *Id.* at 6. The Commonwealth responded that it was prepared to argue its motion to remove Mr. Solomon from ARD. *See id.* at 7-8. Thus, everyone agreed that the April 28, 2021 Order removing Mr. Solomon from ARD was either opened or void *ab initio*, due to Mr. Solomon's lack of notice.

The Commonwealth said that its position in 2021 was that Mr. Solomon should be removed from ARD, because of his subsequent charges. Given that those charges were now dismissed, the Commonwealth found itself in a different procedural posture. *Id.* at 8. Nonetheless, while those charges were pending, the Commonwealth investigated and discovered that Mr. Solomon had a juvenile adjudication that he did not disclose in his original application for ARD. Based on Mr. Solomon's failure to disclose that offense, the Commonwealth claimed that it would not have approved him for ARD. For this reason, the Commonwealth again asked that Mr. Solomon be removed from ARD.

Specifically, the Assistant District Attorney said:

> If we find out that information [*i.e.* that there was a prior juvenile adjudication] when someone is in the [ARD] program, we would have filed for a removal hearing and asked that he be terminated from the program at that time, so . . . I am asking that the Court stand on the removal that was – well, I won't say stand on removal, because we're doing a new hearing, but **I would ask that he be removed from the program at this time**.

*Id.* at 10 (emphasis added).

The court then heard arguments from defense counsel that the victim, Villanova University, did not object to Mr. Solomon remaining in ARD. Defense counsel also explained that Mr. Solomon did not lie on the ARD application, given the language of the questions on the ARD form. After hearing extensive arguments from both sides, the court took the matter under advisement.

On September 5, 2024, the trial court denied the Commonwealth's motion to remove Mr. Solomon from ARD. The Commonwealth petitioned for allowance of appeal to this Court. It also filed a notice of appeal, based on its claim that the trial court's denial of removal would substantially handicap the Commonwealth's prosecution of Mr. Solomon.[2]

Unlike the Majority, I conclude that this Court lacks appellate jurisdiction over the trial court's September 5, 2024 Order denying the Commonwealth's motion to remove Mr. Solomon from ARD. Because "the question of appealability implicates the jurisdiction of this Court, the issue may be raised

---

[2] **See** Pa.R.A.P. 311 and 313.

by this Court *sua sponte*." **Commonwealth v. Horn**, 172 A.3d 1133, 1135 (Pa. Super. 2017). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." **Commonwealth v. Seiders**, 11 A.3d 495, 496–97 (Pa. Super. 2010).

Generally, a party may appeal only from a final judgment of sentence, and this Court will quash an appeal from any prior interlocutory orders. **See Commonwealth v. Getz**, 598 A.2d 1309, 1310 (Pa. 1991); **see also** 42 Pa.C.S.A. § 742; Pa.R.A.P. 341(a). A final order is any order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b). This rule prevents undue delay and avoids piecemeal appellate review, which disrupts the orderly proceeding of litigation in a trial court. **See Commonwealth v. Scott**, 578 A.2d 933, 941 (Pa. Super. 1990).

We have said, "An ARD determination provides no exception to the general rule" regarding finality of orders. **Getz**, 598 A.2d at 1310 (citations omitted). "Rather, it constitutes a non-final proceeding in which the resolution of the criminal prosecution is merely held in abeyance. Acceptance of ARD is an interlocutory matter and consequently is not appealable." **Id.**; **see also Horn**, 172 A.3d at 1137-38 (citing **Getz** and quashing the defendant's appeal from an order denying his petition to be removed from ARD).

Further, the Rules of Criminal Procedure place the authority to remove a person from the ARD program in the sole discretion of the trial court. When the Commonwealth alleges a violation of ARD, the trial court shall conduct a hearing on the issue. If the court finds that "the defendant has committed a

violation of a condition of the program, the judge *may* order . . . that the program be terminated . . . ." Pa.R.Crim.P. 318(C) (emphasis added). The drafters' use of the permissive word "may" also impliedly grants the judge the authority *not* to terminate the program. "No appeal shall be allowed from such order." *Id.*

In fact, we have held that the Commonwealth has no right to take an interlocutory appeal from an order refusing to remove a defendant from ARD in *Commonwealth v. Worzel*, 1457 EDA 2022, 2023 WL 3018876 (Pa. Super. 2023) (non-precedential decision). This Court said an order "denying the Commonwealth's motion to terminate [a defendant's] participation in ARD . . . is not an appealable order." *Id.* *2. Hence, the *Worzel* Court quashed the Commonwealth's appeal. I find *Worzel* persuasive and would follow its holding.

The Majority dismisses *Worzel* as unpersuasive, because, in *Worzel*, we "did not discuss whether the Commonwealth's appeal was proper under [Pennsylvania Rule of Appellate Procedure] 313 because the Commonwealth failed to raise Rule 313 in its notice of appeal." Majority Opinion, ____ A.3d. ____, ____ (Pa. Super. 2026). The fact that the Commonwealth "failed" to assert Rule 313 as a basis for our appellate jurisdiction in *Worzel* is telling, and it should give the Majority pause. There, the Commonwealth apparently recognized that an order denying its motion to remove someone from ARD does not satisfy the test for appealability under Rule 313. As a result, the Commonwealth did not bother citing to that Rule in *Worzel*.

- 6 -

Under Rule 313, an interlocutory order is immediately appealable if it meets the definition of a collateral order. "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). The order in question fails to satisfy the third prong of the test: *i.e.*, "the claim will be irreparably lost." **Id.**

The Majority asserts that an order denying the Commonwealth's motion to remove someone from ARD meets the third prong of the test, but it does not prove that assertion. **See** Majority Opinion, ____ A.3d at ____. In fact, the Majority does not even make a definitive pronouncement on this prong. Instead, the best the Majority can offer is the speculation that "the Commonwealth's right to contest [Mr. Solomon's] reinstatement into ARD **most likely** will be irreparably lost if appellate review is delayed until the end the of this case." **Id.** (emphasis added).

Critically, "mostly likely lost" is **not** the test for immediate appealability under Rule 313(b). For the collateral-order rule to apply, this Court must find that "the claim **will** be irreparably lost." Pa.R.A.P. 313(b) (emphasis added).

By stretching the Rules of Appellate Procedure, the Majority gives the Commonwealth a right to an interlocutory appeal that would otherwise not be allowed. Furthermore, even if "most likely will be irreparably lost" were the test for appealability under Rule 313(b) (and it's not), the order in question – denying the Commonwealth's motion for removal – would not meet that test

either. As I explain below, the Commonwealth can appeal from the final order in the case, *i.e.*, the order dismissing the charges and expunging Mr. Solomon's record.

The Majority misconstrues the order on appeal. The Majority apparently thinks that the appealed-from order involves "the Commonwealth's right to contest [Mr. Solomon's] reinstatement . . . ." Majority Opinion, ____ A.3d at ____. As the procedural posture of this case makes clear, however, the Commonwealth ***conceded*** that the court had improperly removed Mr. Solomon from ARD without notice on April 28, 2021. Therefore, at the start of the June 27, 2024 hearing, all the parties agreed that the April 28, 2021 order was either opened or was void *ab initio*. The trial court then conducted a new hearing on the Commonwealth's motion to remove Mr. Solomon from ARD. This was not a hearing on Mr. Solomon's motion to be reinstated to ARD. Thus, the Majority's Rule 313(b) analysis focused upon a right not at issue in the case. Because Mr. Solomon was ***not*** seeking reinstatement to ARD, the issue of the Commonwealth's need or right to "challenge reinstatement" is not before us in this appeal. Indeed, the Majority's entire analysis of Rule 313 is based on a right not before us.

According to the Majority, if Mr. Solomon "completes the ARD program satisfactorily, he will have the right to obtain dismissal of the burglary charge and expungement of this charge from his arrest record." ***Id.*** "Thus, if the Commonwealth does not exercise its right to contest reinstatement ***now***, and if the court's ruling below was erroneous, the ruling likely cannot be undone

later." ***Id.*** (emphasis added). The Majority cites no law to support its conclusory statements, and, in fact, there is none.

As stated above, our appellate rules allow a party to appeal from a final order in a case; a final order is one that disposes of all claims and all parties. ***See*** Pa.R.A.P. 341(b).

In an ARD proceeding, an order is not final until the court grants the defendant's motion to dismiss the charges. Upon successfully completing ARD, "the defendant may move the court for an order dismissing the charges." Pa.R.Crim.P. 319. The Commonwealth may file an objection to that motion. ***See id.*** If the trial court grants the motion to dismiss the charges over the Commonwealth's objection, that order is final, because it disposes of all the Commonwealth's claims against all the parties. ***See Myers, supra***, (holding that the trial court's order dismissing charges after ARD is a final, appealable order and the trial court's order denying removal from ARD is not immediately appealable based on ***Horn*** and ***Worzel***. In ***Myers***, the trial court *sua sponte* granted the defendant's motion to dismiss the charges without giving the Commonwealth an opportunity to object. This Court remanded for a hearing to allow the Commonwealth to exercise its right to object to the dismissal. The Commonwealth also wanted to challenge the court's prior order declining to find the defendant in violation of ARD. We declined to rule on that issue in the appeal, because given our disposition to remand for a hearing on the motion to dismiss, the ARD issue was interlocutory and not yet appealable. Here, I believe we are bound by ***Myers*** and must quash.

- 9 -

Once the court enters an order dismissing the charges against a defendant after completion of the ARD program, the prior order denying the Commonwealth's motion to remove a defendant from ARD can be brought into question for appellate review. A "notice of appeal filed from the entry of the final order in an action draws into question the propriety of any prior non-final orders." *Rohm & Haas Co. v. Lin*, 992 A.2d 132, 149 (Pa. Super. 2010). Then, on appeal, if this Court determines that the trial court erred in denying removal from ARD, we could – like any other final order – reverse the order dismissing the charges and reverse or vacate the order denying the Commonwealth's motion to remove the defendant from ARD. The prosecution of the defendant would resume. In other words, if we delay consideration of an order denying the Commonwealth's motion to remove someone from ARD, until after the final order, the Commonwealth's claim that the trial court erroneously denied its motion will **not** "be irreparably lost." Pa.R.A.P. 313(b); *Myers, supra*.

The Majority disagrees with my analysis, because it thinks that I am suggesting that the Commonwealth **must wait** until the court grants a defendant's motion to dismiss the charges before it can file a motion to remove a defendant from ARD. To be clear, that is **not** what I am suggesting.

The procedure that I am suggesting is that the Commonwealth do exactly what it did in this case, which is to file the motion to remove immediately when it believes it has grounds for removal. Here, the Commonwealth filed a motion to remove under Pa.R.Crim.P. 318, and the trial

court denied it. I agree with the Majority that the Commonwealth must file a timely motion for removal "during the period of the program" under Rule 318 to preserve the issue of removal from ARD for appeal.

The fact that the Commonwealth makes the motion during the program, however, does not render the order denying that motion a final order. Instead, I suggest that the Rules mandate that the Commonwealth must wait to appeal from that order.

Hence, the alleged "flaw in [my] argument" that the Majority believes it has identified, does not exist. Majority Opinion, ____ A.3d ___, ____. I am not setting up a waiver trap for the Commonwealth. Quite the opposite. In my analysis, I assume that the Commonwealth filed a timely motion for removal **during the ARD period**, and the trial court denied that motion, so that the Commonwealth has preserved the issue. Then, the Commonwealth may renew the objection based on its prior motion to remove (not unlike a post-sentence motion), when the defendant moves for dismissal of the charges. If the trial court overrules the Commonwealth's objection, the Commonwealth can appeal from that final order with its claim of error as to removal properly preserved.

Here, it is clear beyond any doubt that the September 5, 2024 Order, denying the Commonwealth's motion to remove Mr. Solomon from ARD, does not satisfy the third and final prong of the definition of a collateral order. Thus, in **Worzel**, **supra**, neither the Commonwealth nor our panel mistakenly failed to invoke Pa.R.A.P. 313 as a basis for appellate jurisdiction. It was clear to all

involved in **Worzel** that Rule 313 does not apply to an order refusing to remove a defendant from ARD, because such an order is **not** collateral. **See** Pa.R.A.P. 313(b).

By misclassifying the September 5, 2024 Order as a collateral order, the Majority has expanded the appellate jurisdiction of this Court and disregarded the policy of the Supreme Court of Pennsylvania disfavoring piecemeal appeals. As Chief Justice Todd has made abundantly clear, we are to "construe the collateral order doctrine narrowly . . . to avoid piecemeal determinations and the consequent protraction of litigation." **Rae v. Pennsylvania Funeral Directors Association**, 977 A.2d 1121, 1129 (Pa. 2009) (quoting **Sullivan v. Philadelphia**, 107 A.2d 854, 855 (Pa. 1954)). "Such piecemeal litigation imposes a substantial burden on the orderly administration of justice." **Id.** (some punctuation and citations omitted).

Further, the Majority's reliance upon **Commonwealth v. Boos**, 620 A.2d 485 (1993) ("**Boos II**"), and **Commonwealth v. Shearer**, 882 A.2d 462 (Pa. 2005), does not persuade me otherwise. First, in **Boos**, the Commonwealth filed its appeal to this Court in 1989 – *i.e.*, before the appellate rules changed the definition of what constitutes a "final order." **See Commonwealth v. Boos**, 02783 PHL 89, (Pa. Super. 1990), *reversed*, 620 A.2d 485 (Pa. 1993) (non-precedential decision) ("**Boos I**"). "Prior to 1992, there were cases that deemed an order final if it had the practical effect of putting a party out of court, even if the order did not end the litigation as to all claims and all parties." Pa.R.A.P. 341 Comment. Now, that Rule restricts

appeals to a "final order," which is defined as an order that "dispose of **all** claims and **all** parties." Pa.R.A.P. 341(b)(1). In the present appeal, the order from which the Commonwealth appealed does not satisfy the modern definition of a "final order," because the order disposed of no claims and no parties.

Admittedly, **Boos II** stated in a footnote, "The instant order terminated the Commonwealth's prosecution of the DUI charge against appellee. The order, therefore, is final for the purpose of appeal." **Boos II**, 620 A.2d at 487 n.5. However, because the Commonwealth took its appeal in that case in 1989, the Commonwealth appealed under the former version of the Rules.

Hence, when the Supreme Court adopted a new definition of "final order," the holding of the **Boos II** footnote became obsolete. The new Rule 341(b)(1) and its definition of "final order" have legislatively supplanted the statement on finality in the **Boos II** footnote. Indeed, because **Boos II** was decided in February of 1993 and the new Rule 341(b)(1) was already in effect, it was interpreting a Rule that no longer existed. Hence, the precedential value of **Boos II** encompasses only appeals taken prior to when the new Rule 341(b)(1) went into effect in 1992.

Here, the Commonwealth appealed on October 4, 2024, well after the new definition of "final order" became the law. Thus, the Commonwealth took the instant appeal several decades after the new Rule 341(b)(1) went into effect. The **Boos II** footnote, addressing finality under the repealed rule, is inapplicable to this appeal.

- 13 -

Also, **Shearer** was not an ARD case; thus, it is clearly distinguishable from the procedural posture of this appeal. **Shearer** merely cites **Boos**, for the proposition that interlocutory orders not involving suppression issues **may** be appealed under Rule 311(d). However, the **Shearer** Court offers no analysis of the appealability of orders denying removal from ARD. That decision does not bind this Court on the question of whether this appeal was from a "final order," as that phrase is now defined in Pa.R.A.P. 341(b)(1). Thus, as I interpret the precedents, the Supreme Court has never analyzed or ruled on the appealability of an order denying the Commonwealth's motion to remove a person from ARD under the current Rules of Appellate Procedure.

Finally, the Majority's reliance upon Pennsylvania Rule of Appellate Procedure 311(d) fares no better than its reliance upon **Boos II** and **Shearer**. According to the Majority, the Commonwealth may appeal to this Court from the interlocutory order denying its motion to remove Mr. Solomon from ARD, because the trial court's decision "effectively terminates his prosecution." Majority Opinion, ___ A.3d at ___. This is demonstrably false.

As explained above, if the Commonwealth waits to appeal from the truly final order in an ARD proceeding (*i.e.* the order dismissing the charges upon a defendant's successful completion of the program), then this Court can correct any prior error. We can reverse both the order dismissing the charges and the prior order denying the Commonwealth's motion to remove the defendant from ARD. At that point, the prosecution would be reopened. The charges would be back in play, and we would remand the matter for a trial on

the merits. Thus, the order denying the Commonwealth's motion to remove Mr. Solomon from ARD in no way "effectively terminate[d] his prosecution." *Id.*

Moreover, unlike an order suppressing the Commonwealth's evidence or striking some, but not all, charges from an information, an order denying removal from ARD does not handicap the prosecution, as the Commonwealth and the Majority suggest. This is so, because the successful completion of the ARD program is not a trial on the merits of the charges. Hence, the constitutional double-jeopardy prohibitions on a retrial do not apply.

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards *of trial and possible conviction* more than once for an alleged offense." *Serfass v. United States,* 420 U.S. 377, 387 (1975) (emphasis added). "The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense . . . ." *Id.* at 387-88 (some punctuation omitted).

Under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Commonwealth v. Hallman*, 67 A.3d 1256, 1261 (Pa. Super. 2013). Critically though, "jeopardy attaches *when the jury is sworn.*" *Id.* (emphasis added).

- 15 -

All the cases which the Majority relies on to support its contention that *Worzel* incorrectly limited the concept of handicapping the prosecution to evidentiary rulings were procedurally distinguishable from this case. Those cases were headed to a trial with a substantive ruling adverse to the Commonwealth. If we did not permit a pretrial appeal, the Commonwealth would have been forced to go to trial without all its evidence or charges, and double jeopardy would attach. By contrast, in ARD, by its very nature, the defendant is not heading to trial, so long as he remains in ARD. Thus, double jeopardy does not attach upon successful completion of ARD, and the Commonwealth does not face a trial while handicapped by a potentially erroneous pretrial ruling.

Unlike the orders in those cases, an order denying a motion to remove someone from ARD does not impose the prosecutorial handicap that the Commonwealth claims under Rule 311(d). Instead, the error can be corrected, and the Commonwealth can eventually go to trial, unhandicapped, if it is successful on an appeal from the final order dismissing the charges.

Because there is no prosecution prior to the final, appealable order, there is no basis for the Commonwealth's contention that the order in question handicapped its non-pending prosecution of Mr. Solomon. Indeed, during ARD, "the criminal prosecution is . . . held in abeyance." *Getz*, 598 A.2d at 1310 (citations omitted). The prosecution remains in abeyance until a timely final-order appeal is taken and resolved. Hence, Rule 311(d) does not apply to an ARD ruling.

In my view, neither Appellate Rule 311(d) nor Appellate Rule 313 is a valid basis for this Court to assert jurisdiction over the Commonwealth's premature, interlocutory appeal. Additionally, Criminal Procedure Rule 318(C) provides that no appeal shall be allowed from orders regarding removal from ARD. I would adopt *Worzel* as correctly decided, deny the Commonwealth's petition for allowance of appeal, and quash its related notice of appeal.

Therefore, I must respectfully dissent.